**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| JASON CORTEZ TWILEY, | : | Case No. 2:24-cv-3851 |
| | : | |
| Petitioner, | : | |
| | : | |
| vs. | : | District Judge Douglas R. Cole |
| | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| WARDEN, SOUTHEASTERN | : | |
| CORRECTIONAL INSTITUTION, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

Petitioner Jason Cortez Twiley, a state prisoner proceeding without the assistance of counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 3). The matter is before the Court to consider the Petition (Doc. 3), the Return of Writ (Doc. 9), Petitioner's Reply (Doc. 15), and the state court record (Docs. 8, 8-1 through 8-4). The Undersigned **RECOMMENDS** the Petition be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.

## I.     FACTS AND PROCEDURAL HISTORY

A jury in Jefferson County, Ohio convicted Petitioner of murder, with a firearm specification, and aggravated arson. He was sentenced to life in prison, without the possibility of parole for fifteen years, on the murder count; three years on the gun specification; and eight to twelve years on the aggravated arson. (Sentencing Entry, Doc. 8, at PAGEID # 75–80 ("All Counts are to run consecutive to each other[.]")).

### A.     Factual History

Ohio's Seventh District Court of Appeals summarized the case:

{¶1} Defendant-Appellant, Jason Cortez Twiley, appeals from a Jefferson County Common Pleas Court judgment convicting him of murder with a firearm specification and aggravated arson, following a jury trial.

{¶2} In the early morning hours of August 12, 2019, Brittany Littlejohn-Brown's house on Maxwell Avenue in Steubenville was on fire. A few hours later, Brittany's body was found stuffed into a neighbor's garbage can. She had been shot and killed.

{¶3} On the evening of August 11, shortly before 9:00 p.m., Brittany's next-door neighbor saw appellant at Brittany's house and briefly spoke with him. Appellant and Brittany were in a relationship at the time.

{¶4} At approximately 3:00 a.m. on August 12, the neighbor's son heard a "dragging" noise outside of Brittany's house and looked to see what was happening. He saw a man that looked like appellant. Approximately 20 to 30 minutes later, the neighbor noticed smoke coming out of Brittany's house and called for help.

{¶5} Steubenville Police and Fire Departments responded. No people were located in the house but a large amount of blood was found throughout the house. Fire officials determined that three separate fires had been lit inside the house with gasoline. When no one was found in the house, a search for Brittany ensued.

{¶6} Police searched the alley behind Brittany's house where all of the detached garages for the houses on that street were located. One neighbor reported to police that her garage had just recently been cleaned out but now it contained garbage and other items that did not belong to her. Among those items were a cigarette butt and a receipt. Also, the neighbor's city-issued garbage can was missing.

{¶7} Police next found a partially-open garage a few houses down from Brittany's house. In that garage, they found a mattress on top of a city-issued garbage can. Police found Brittany's naked body inside the garbage can.

{¶8} An investigation revealed that the receipt found in the neighbor's garage was from a gas station in Weirton, West Virginia, where a woman who had lent her car to appellant had purchased gas. Appellant had borrowed the woman's car the night before Brittany was murdered. Appellant later told the woman that his girlfriend had been in a fire and he had to rush to the hospital. The woman never saw appellant again. Her car was eventually located in Chicago with a different license plate on it. DNA testing on the cigarette butt found in the neighbor's garage with the receipt revealed that the likelihood of the DNA belonging to anyone other than appellant was more than one in one trillion.

{¶9} Police searched for appellant. With the help of the U.S. Marshals, they traced his cell phone first to Chicago. In Chicago, the marshals found the car appellant had borrowed bearing different license plates. They also found a cigarette butt

inside the car that also contained appellant's DNA. The marshals eventually located appellant in Louisville, Kentucky.

{¶10} On November 6, 2019, a Jefferson County Grand Jury indicted appellant on one count of murder, an unspecified felony in violation of R.C. 2903.02(A) with a firearm specification, and one count of aggravated arson, a second-degree felony in violation of R.C. 2909.02(A)(2). Appellant entered a not guilty plea.

{¶11} The matter proceeded to a jury trial. The jury found appellant guilty as charged.

{¶12} The trial court subsequently sentenced appellant to life in prison without the possibility of parole for 15 years on the murder count, three years on the firearm specification, and 8 to 12 years on the aggravated arson count. The court ordered appellant to serve the sentences consecutive to one another for a total sentence of three mandatory years followed by life in prison without the possibility of parole for 15 years, followed by 8 years minimum to 12 years maximum in prison.

*State v. Twiley*, 203 N.E.3d 843, 2022-Ohio-4751 (Ohio App. 7th Dist. 2022); (Doc. 8, at PAGEID # 170–171).

## B. Direct Appeal

Twiley, represented by counsel, appealed his conviction, raising four errors before the state appellate court:

1. The verdicts of guilty to the offenses of murder and aggravated arson were not supported by sufficient evidence and were against the manifest weight of the evidence.

2. The trial court abused its discretion in permitting the state of Ohio to introduce other-acts evidence.

3. The appellant was denied the effective assistance of counsel.

4. The trial court abused its discretion in sentencing the appellant to consecutive sentences and the maximum sentence for aggravated arson.

*State v. Twiley*, 203 N.E.3d 843 (Oh. App. 7th Dist. 2022); (Brief of Appellant, Doc. 8, at PAGEID # 88–115). The state appellate court affirmed the trial court's judgment. *Twiley*, 203 N.E.3d 843; (Doc. 8, at PAGEID # 169–190).

3

### C. Delayed Appeal to the Ohio Supreme Court

Twiley, proceeding *pro se*, filed for and received leave to file a delayed appeal to the Supreme Court of Ohio. (Doc. 8, at PAGEID # 191, 193; *id*. at PAGEID # 242); *State v. Twiley*, 170 Ohio St.3d 1418 (2023). In his memorandum in support of jurisdiction, Twiley raised three propositions of law:

I. The verdicts of guilty to the offenses of murder and aggravated arson were not supported by sufficient evidence and were against the manifest weight of the evidence.

II. The trial court abused its discretion in permitting the state of Ohio to introduce other-acts evidence.

III. The Appellant was denied the effective assistance of counsel.

(Memorandum, Doc. 8, at PAGEID # 247–59). Ultimately, the Supreme Court of Ohio declined to hear the matter. (Entry, Doc. 8, at PAGEID # 262); *State v. Twiley*, 170 Ohio St.3d 1517 (2023).

### D. State Post-Conviction

It does not appear that Twiley pursued post-conviction relief in state court.

## II. FEDERAL HABEAS PROCEEDINGS

Proceeding *pro se*, Twiley filed the instant federal habeas petition. (Doc. 3). He raises three grounds for relief:

**GROUND ONE**: Petitioner's due process clause of the 14th Amendment to the U.S. Constitution was violated when the State found him guilty of Murder and Aggravated Arson upon insufficient evidence.

**Supporting Facts**: There was no evidence presented linking him to the homicide nor the Arson. No one observed the Petitioner in the commission of performing either act. The DNA samples took from victim[']s body at crime scene did not show Petitioner as a contributor. Unknown male DNA was on the crime scene. No firearm was recovered, no fingerprints on DNA was recovered from gasoline can left in the scene showed the Petitioner as a contributor.

**GROUND TWO**: Other-acts evidence was entered during the trial that violated Petitioner's due process clause of the 14th Amendment to the U.S. Constitution.

4

**Supporting Facts**: It is clear from the record that the Court committed reversible error in permitting the state to introduce other-acts evidence at trial. The reason given was motive. A cell phone video taken of the incident by Reid was permitted to be played to the jury. Helen Terry was permitted to give hearsay evidence testimony. Petitioner was accused of being jealous and controlling, yet the State did not present evidence that corroborated the same. There was no evidence at trial presented that established that the Appellant or victim was ending a relationship, which would be significant to the idea of motive for the homicide.

**GROUND THREE**: The Petitioner was denied right to effective assistance of counsel as guaranteed by the 6th and 14 amendments to the U.S. Constitution.

**Supporting** Facts: Counsel failed to examine Cheryl Reid the mother of the victim. Reid proffered testimony at trial of damaging other act evidence, such as the tire slashing incident that occurred shortly before homicide and arson. She testified Petitioner was controlling and had threating (sic) her daughter in the past. None of her statements or opinions were challenged by defense counsel on examination.

(Doc. 3, at PAGEID # 14–17).

Respondent filed the state court record and a Return of Writ. (Docs. 8, 9). In it, Respondent agrees that Twiley's claims were presented to the state courts and are ready for consideration on the merits. (Doc. 9, at PAGEID # 1264). Yet, says Respondent, the claims fail on the merits. (*See generally id.*). Twiley filed a Traverse, offering additional reasons why the Petition should be granted. (*See generally* Doc. 15).

## III.    STANDARD OF REVIEW

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102

(2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA permits federal courts to issue writs of habeas corpus with respect to a "claim that was adjudicated on the merits in State court proceedings" under two circumstances. The state-court decision either:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1):

Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Williams*, 529 U.S. at 412-13.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v.*

*Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.    DISCUSSION

The Undersigned concludes that none of Petitioner's arguments have merit.

### A.    Ground One – Sufficiency of the Evidence

In his first assigned error, Twiley argues that the evidence at his trial was insufficient to support his convictions. (Doc. 3, at PAGEID # 14). In particular, he contends that the evidence was too light because: No one witnessed him commit the crimes or even heard a gunshot, DNA samples from the victim's body matched an unknown male, the firearm was not recovered, there were no fingerprints or DNA evidence found on the gasoline can left at the crime scene, and the cigarette butt with his DNA on it could have been moved. (Doc. 15, at PAGEID # 1314–18).

Twiley raised the same issue on direct appeal to the state appellate court. (Brief of Appellant, Doc. 8, at PAGEID # 107). The court thoroughly analyzed the evidence that supported Twiley's convictions and found it sufficient. *State v. Twiley*, 203 N.E.3d 843, 850–56, 2022-Ohio-4751 (Ohio App. 7th Dist. 2022).

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established the standard federal habeas courts must use for evaluating constitutional claims challenging the sufficiency of the evidence. Because the Due Process Clause requires the state to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, "the relevant question" in assessing the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Under *Jackson*, the state is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). The trier of fact to resolves conflicts in testimony, weighs the evidence, and draws reasonable inferences. *Jackson*, 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318–19 & n.13; *see also United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).

Under AEDPA, federal habeas review of a claim challenging the sufficiency of the evidence is even more stingy. As the Sixth Circuit explained in *Brown v. Konteh*, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." 567 F.3d at 205. The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.*

(emphasis in original); *see also Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).  The Sixth Circuit went on to emphasize:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt.  We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses with which he was charged.  Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based upon the evidence introduced at trial.

567 F.3d at 205 (emphasis in original).  All in all, a habeas petitioner raising a sufficiency of the evidence claim faces "a 'nearly insurmountable hurdle.'"  *James v. Corrigan*, 85 F.4th 392, 395 (6th Cir 2023) (quoting *Davis*, 658 F.3d at 534).

Here, the jury found Twiley guilty of murder with a gun specification as well as aggravated arson.  The state appellate court properly began its analysis by setting forth the applicable sections of the Ohio Revised Code governing those offenses.  *Twiley*, 203 N.E.3d at 850 (referencing O.R.C. § 2903.02(A) (murder) and § 2909.02(A)(2) (aggravated arson)); *see Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (noting the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law") (quoting *Jackson*, 443 U.S. at 324 n.16).  Ohio Revised Code § 2903.02(A) sets forth the crime of murder and provides that "No person shall purposely cause the death of another . . . ."  Likewise, § 2909.02(A)(2) sets forth the crime of aggravated arson and provides that "No person, by means of fire or explosion, shall knowingly do any of the following . . . [c]ause physical harm to any occupied structure[.]"

Ultimately, the state appellate court determined that the evidence—even if circumstantial—was enough to support Twiley's convictions.  *See James v. Corrigan*, 85 F.4th 392, 396 (6th Cir. 2023) (holding that the State "can prove guilt beyond a reasonable doubt using

exclusively circumstantial evidence"); s*ee also Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008) (noting that circumstantial evidence alone may be sufficient to support a conviction) (internal citation omitted); *Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) (in considering a sufficiency claim, "circumstantial evidence is entitled to equal weight as direct evidence"); *Gipson v. Sheldon*, 659 F. App'x 871, 882 (6th Cir. 2016) (finding that a "lack of physical evidence does not render the evidence presented insufficient" and "it is clearly established that a jury's verdict may be based entirely on circumstantial evidence") (citations omitted).

Applying the required double-layered deferential standard, the state appellate court's sufficiency determination is neither contrary to nor an unreasonable application of established Supreme Court precedent. The evidence at trial established that an aggravated arson and murder occurred. It was undisputed that someone shot and killed Brittany Littlejohn; stuffed her naked body into a garbage can; and attempted to burn down her house (with her dog trapped inside), using gasoline as an accelerant. The only question was whether sufficient evidence identified Twiley as the perpetrator. The state appellate court carefully detailed the evidence pointing to Twiley, and he does not argue that court misquoted or incorrectly summarized the trial testimony. The state court record reflects the following.

Twiley and Brittany were in a romantic relationship for about six months before she was murdered. (Doc. 8-2, at PAGEID # 674). The two lived together at Brittany's Maxwell Avenue residence, which was the likely murder scene and where the arson occurred. Multiple witnesses told the jury about the couple's volatile and violent relationship. Helen Terry, Brittany's close friend, testified that a week before the murder, Brittany stayed at her house for about five days. During that stay, Terry overheard Brittany tell Twiley that she didn't know whether she would return home because she was unsure if Twiley would harm her. (Doc. 8-3, at PAGEID # 850).

Terry observed bruises on Brittany's arms and legs; when she asked what had happened, Brittany told her Twiley caused them. Brittany also shared that Twiley punched her on the side of her face, rupturing her eardrum. (*Id*. at PAGEID # 851–53).

The jury heard about the days leading up to the murder. On Saturday, August 10, 2019, the couple argued about a water bill. Brittany went to her mom's house, close by on Maxwell Avenue. Cheryl Reid, Brittany's mom, testified that Brittany was "distraught" when she arrived, explaining that Twiley would not leave her alone. She told her mom, "I want him to leave[]. I want him out of my house." (Doc. 8-2, at PAGEID # 677–78). Before long, Twiley showed up at Reid's house with a brick in hand. The couple continued to argue, and Twiley threatened that he was "going to bust her car up." (*Id*. at PAGEID # 678–79). Reid took out her phone and recorded Twiley slashing Brittany's tires. The jury saw the video. And they heard from Brittany's sister, Brandy Ross. Ross told the jury that she watched as Twiley slashed Brittany's tires and remembers Twiley saying that he wanted to kill Brittany. (*Id*. at PAGEID # 706).

Eventually, Brittany left her mother's home. That was the last time Brittany's mother or sister saw her.

At some point during the next day, August 11, Twiley returned to Reid's house and asked for help getting Brittany's car repaired. When Reid inquired about Brittany's whereabouts, Twiley claimed he arranged for Brittany's friend, Unique, to drive her to work. (*Id*. at PAGEID # 691–92). Symone Madison, who goes by the name Unique, testified that Twiley didn't make that ask. In fact, she had never spoken to or met Twiley before. (Doc. 8-3, at PAGEID # 840–45).

Around 9:00 p.m. on August 11, 2019, a neighbor, James Elder, saw Twiley at Brittany's house. They spoke briefly. Several hours later—and about twenty minutes before the fire started—that neighbor's son, Jeffrey Elder, saw a man with hair similar to Twiley's dragging or

rolling something heavy behind Brittany's house.  It sounded like the man was moving a "garbage can" or "wheelbarrow."  (Doc. 8-3, at PAGEID # 746–64).  The younger Elder also testified that, about a week before the murder, he heard Twiley tell Brittany that one day she was going to make him "put his hands on her."  (*Id*. at PAGEID # 762).

Patrick Sinclair lived behind Brittany, and he and his daughter sometimes babysat Twiley's infant son.  On the evening of August 11, Twiley dropped his son off for Sinclair to babysit.  Twiley returned around 3:00 a.m. on August 12 to collect his son.  (Doc. 8-3, at PAGEID # 771–72).

By 3:30 a.m. on August 12, Brittany's house was ablaze.  Her body was recovered in a city-issued garbage can in a neighbor's garage.  Her body had a gunshot wound to the torso, and the bullet fragment recovered from her body had markings consistent with being fired from a 9mm.  The jury heard testimony that Twiley was seen with a 9mm in the month leading up to the murder.

And the jury heard more.  Brandi Boyd, another neighbor, testified that she previously heard Brittany and Twiley argue, and Brittany told her Twiley threatened to kill her.  (Doc. 8-3, at PAGEID # 787, 799–80).  Boyd testified that she had a city-issued garbage can that she typically kept behind her garage.  Because she just paid to have her garage cleaned out, her garage was completely empty.  When she got home from work the morning after the fire, she noticed her city-issued garbage can was missing and her other garbage can was full of items that did not belong to her or her children.  The items, which included diapers, clothing and slippers, were not in her garbage can before she left for work.  Brittany's mom identified the slippers in Boyd's garage can as belonging to her daughter.  (Doc. 8-2, at PAGEID # 698).  And DNA from a cigarette butt found in Boyd's recently cleaned out garage matched Twiley.

Caitlyn Hinkle provided additional pieces to the puzzle.  She testified that she loaned her car to Twiley on August 11.  At the time, the car had children's items in it, including diapers and

blocks. Hinkle identified some of the items found in Boyd's trashcan as the items that were in her car. When Twiley did not return the car, Hinkle reported it stolen. It was subsequently found in Chicago with different license plates and contained another cigarette butt with Twiley's DNA. (Doc. 8-3, at PAGEID # 815–819).

Law enforcement analyzed Twiley's cell phone records. By 5:36 a.m. on August 12, his cell phone was somewhere west of Steubenville. By 6:17 a.m., it was near Columbus. At 9:15 a.m., his cell phone was northwest of Indianapolis, Indiana. And by 10:25 a.m., his cell phone was near Chicago, Illinois. (Doc. 8-3, at PAGEID # 988–989). Eventually, with the help of the U.S. Marshalls, Twiley was arrested in Kentucky. (Doc. 8-4, at PAGEID # 1056).

Based on the foregoing, the Undersigned cannot conclude that the state appellate court unreasonably determined that, when viewed in a light most favorable to the prosecution, sufficient evidence supports Twiley's convictions. Twiley's first ground for relief should be **DENIED**.

### B.  Ground Two – Other Acts Evidence

In his second ground for relief, Twiley argues the trial court's admission of prejudicial other acts evidence to prove motive violated his Fourteenth Amendment right to due process. (Doc. 3, at PAGEID # 16).

> **GROUND TWO**:  Other-acts evidence was entered during the trial that violated Petitioner's due process clause of the 14th Amendment to the U.S. Constitution.
>
> **Supporting Facts**:  It is clear from the record that the Court committed reversible error in permitting the state to introduce other-acts evidence at trial. The reason given was motive. A cell phone video taken of the incident by Reid was permitted to be played to the jury. Helen Terry was permitted to give hearsay evidence testimony. Petitioner was accused of being jealous and controlling, yet the State did not present evidence that corroborated the same. There was no evidence at trial presented that established that the Appellant or victim was ending a relationship, which would be significant to the idea of motive for the homicide.

(*Id.*)  In his Traverse, Twiley argues the trial court committed reversible error by permitting the state to: (1) Introduce evidence of the tire slashing incident; (2) introduce testimony about bruises observed on Brittany; and (3) introduce a statement made by Brittany stating that Twiley would kill her.  (Doc. 15, at PAGEID # 1328).

On direct appeal, the state appellate court considered and rejected Twiley's claim regarding the admission of other acts evidence:

{¶56}  Appellant's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE STATE OF OHIO TO INTRODUCE OTHER-ACTS EVIDENCE.

{¶57}  Here appellant contends the trial court committed reversible error by permitting the state to introduce other-acts evidence.  Specifically, he asserts the court should not have allowed the state to introduce evidence regarding: (1) a tire-slashing incident; (2) bruising observed on Brittany; and (3) a statement by Brittany that appellant would kill her.

{¶58}  Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶59}  We review the admission of other-acts evidence under a mixed standard of review.  The Ohio Supreme Court has stated that the admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law.  *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 72, citing *State v. Hartman*, 161 Ohio St.3d 214, 161 N.E.3d 651, ¶ 22.  But a trial court has discretion to allow other-acts evidence that is admissible for a permissible purpose.  *Id.*

{¶60}  The Ohio Supreme Court has set out a three-step analysis for courts to use when determining whether other acts evidence is admissible.  *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278.  First, the court must consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  *Id.* at ¶ 20; Evid.R. 401.  Second, the court must consider whether the other acts evidence is presented to prove the character of the accused in order to show activity in conformity therewith or whether it is presented for a legitimate purpose, such as those stated in Evid.R. 404(B).  *Id.* Finally, the court must consider

14

whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *Id.*; Evid.R 403.

{¶61} First, appellant takes issue with testimony that he slashed Brittany's tires on August 10, 2019. Reid testified that on that date, appellant and Brittany were arguing and she watched as appellant slashed the tires on Brittany's car. (Tr. 392-394). Reid even took a video of the incident on her cell phone. (State Ex. 3). Defense counsel did not object to the testimony but did object to the video. (Tr. 411-413). Ross and Beads also witnessed the tire slashing and corroborated Reid's testimony. (Tr. 418, 542). Defense counsel did not object to their testimony.

{¶62} Second, appellant takes issue with testimony regarding bruises on Brittany. Terry testified that during the first week of August 2019, Brittany stayed at her house. During this time, Brittany told Terry that appellant had punched her in the side of the face and ruptured her eardrum. (Tr. 565). And when Terry questioned Brittany about bruises on her arms and legs, Brittany told her that appellant had left those bruises. (Tr. 566). Defense counsel did not object to these statements.

{¶63} Third, appellant takes issue with a statement by Brittany to Boyd that appellant said he would kill her. Boyd testified that in the months that appellant was living with Brittany, Brittany relayed to her that appellant said he would kill her. (Tr. 512). Defense counsel moved to strike this testimony. (Tr. 514). The trial court gave the jury a limiting instruction as to Boyd's testimony:

> You heard the testimony of Brandi Boyd, who testified that the victim told her of threats. You may consider this testimony only as it relates to the victim's state of mind and whether she wanted to end her relationship with the Defendant, as this may or may not be relevant to motive, as you determine.

(Tr. 854).

{¶64} Under the first step of the test set out in *Williams*, 134 Ohio St.3d 521, 983 N.E.2d 1278, the others acts evidence here is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.

{¶65} All of this testimony goes to show appellant's motive and intent as is permissible by Evid.R. 404(B). The state's theory of the case was that Brittany had had enough of appellant and was preparing to end their relationship. In the state's closing argument, the prosecutor emphasized this point when discussing the tire-slashing incident that occurred two days prior to the murder. (Tr. 813). The prosecutor discussed how appellant was so mad at Brittany for wanting to end their relationship that he slashed her tires in front of her mother, sister, and sister's fiancé. (Tr. 813). This court has previously found that when the state establishes a prior bad act as evidence of motive, the argument that such evidence is inadmissible

under Evid.R. 404(B) is without merit.  *State v. Moore*, 7th Dist. Mahoning No. 02CA152, 2004-Ohio-2320, 2004 WL 1043223, ¶ 45.

{¶66} Moreover, there was testimony that in the week prior to the murder, appellant threatened Brittany by saying that one of these days she would make him "put his hands on her."  (Tr. 475).  Terry's testimony regarding the bruises she saw on Brittany further corroborated this intent.

{¶67} This takes us into the next step in the *Williams* test, the state presented the above evidence for a legitimate purpose set out in Evid.R. 404(B), that being motive.

{¶68} Finally, the probative value of the other-acts evidence is not substantially outweighed by the danger of unfair prejudice.  While the evidence was clearly prejudicial against appellant, it was not *unfairly* prejudicial.  The evidence complied with Evid.R. 404(B) and, when defense counsel requested a limiting instruction as to Boyd's testimony, the court granted this request.  We are to presume that the jury followed the trial court's instructions.  *State v. Sibert*, 98 Ohio App.3d 412, 425, 648 N.E.2d 861 (4th Dist.1994), citing *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), paragraph four of the syllabus.

{¶69} In sum, we cannot conclude that the trial court abused its discretion in allowing the admission of the other-acts evidence.

{¶70} Accordingly, appellant's second assignment of error is without merit and is overruled.

*State v. Twiley*, 203 N.E.3d 843, 856–57 (Ohio App. 7th Dist. 2022).

In his Traverse, Twiley argues that the trial court abused its discretion in applying Evidence Rule 404(b).  (Doc. 15, at PAGEID # 1329–30).  Although Twiley references Rule 404(b) of the Federal Rules of Evidence, his trial was conducted in state court and was subject to the Ohio Rules of Evidence.

As an initial matter, the Undersigned questions whether Twiley fairly presented his federal due process claim to the state courts.  In the body of his brief before the state appellate court, Twiley argued that the trial court improperly admitted the evidence under Rule 404(b), and he phrased his argument entirely in terms of Ohio evidence law.  (Brief, Doc. 8, at PAGEID # 109–110).  The Undersigned is unable to locate any citation to federal authority, and the state appellate

16

court addressed Twiley's claim as one arising under state law.  Nevertheless, Respondent did not raise the defense of procedural default in connection with this claim.

Instead, Respondent argues that Twiley's claim is not cognizable on habeas corpus review. (*See* ROW, Doc. 9, at PAGEID # 1288).  To the extent that Twiley argues the state court unreasonably applied Rule 403's balancing test, Respondent is correct that the claim is not cognizable.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241). *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (finding "to the extent that [petitioner] claims that the trial court's admission of the 'other acts' evidence violated Ohio R. Evid. 404(B), he does not provide a cognizable basis for granting habeas relief"); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("'Errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus.'") (quoting *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)).  Consequently, Twiley's claim, to the extent it focuses on whether the trial court improperly applied state evidentiary rules, is not for this Court's review.

With that said, habeas relief may be available where an alleged error in admitting evidence is "so egregious that it results in a denial of fundamental fairness" in the trial process.  *See Bugh*, 329 F.3d at 512.  Importantly, "courts have defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Wright v. Dallman,* 999 F.2d 174, 178 (6th Cir. 1993) (cleaned up).  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir.

2000) (quoting *Montana v. Egelhoff,* 518 U.S. 37, 43 (1996)).  For federal habeas relief to be granted, Twiley must identify "a Supreme Court case that addresses the 'specific kind of evidence' challenged."  *Mix v. Burgess*, No. 23-1830, 2024 WL 4212193, at *2 (6th Cir. Mar. 18, 2024) (quoting *Stewart v. Winn*, 967 F.3d 534, 540 (6th Cir. 2020)).  Here, Twiley cannot do so because "the Supreme Court has never held that admission of other bad acts evidence violates the fair trial guarantee." *Wallace v. Warden*, No. 1:19cv429, 2020 WL 4748546, *10 (S.D. Oh. Aug. 17, 2020) ("'There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.'") (quoting *Bugh*, 329 F.3d at 512).

The state appellate court reviewed Twiley's evidentiary claims and found that most of the evidence at issue was relevant to prove motive and intent.  Although the evidence was prejudicial, the state courts determined it was not unfairly so.  Plus, any prejudicial impact of admitting much of this evidence was minimized by the trial court's use of a limiting instruction.  Because Twiley has not identified any fundamental unfairness in his trial from the admission of this evidence, he has not demonstrated that the admission of other acts evidence violated his federal due process rights.  The Undersigned **RECOMMENDS** Twiley's second ground for relief be **DISMISSED with prejudice.**

### C.    Ground Three – Ineffective Assistance of Counsel

In his third ground for relief, Twiley argues trial counsel was ineffective because his cross examination of the victim's mother, Cheryl Reid, was subpar.  Petitioner says:

**GROUND THREE**:  The Petitioner was denied right to effective assistance of counsel as guaranteed by the 6th and 14 amendments to the U.S. Constitution.

**Supporting Facts**:  Counsel failed to examine Cheryl Reid the mother of the victim.  Reid proffered testimony at trial of damaging other act evidence, such as the tire slashing incident that occurred shortly before homicide and arson.  She

testified Petitioner was controlling and had threating (sic) her daughter in the past. None of her statements or opinions were challenged by defense counsel on examination.

(Doc. 3, at PAGEID # 17).

But in his Traverse, Twiley expands this ground for relief to include all three allegations of ineffective assistance of trial counsel that he presented to the state appellate court. He argues that counsel was ineffective by eliciting a damaging response from the victim's sister, Brandy Ross, regarding a physical altercation Twiley had with one of Ross's female friends. On top of that, he says that counsel botched the cross examination of Dr. Barr from the Cuyahoga County Medical Examiner's Office. (Doc. 15, at PAGEID # 1332). More specifically, he contends that his lawyer should have objected to Barr's testimony because Barr did not perform the autopsy, and if the autopsy report had been excluded on this basis, the State would not have been able to prove that Brittany's death was a homicide. (*Id*. at PAGEID # 1332–33).

Typically, a petitioner may not assert new claims for the first time in a Traverse that he did not raise in his Petition. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2000) (claims raised for the first time in a traverse are improper); *Rydarowicz v. Mackey*, No. 4:24-cv-1691, 2025 WL 1222672, at *15 (N.D. Ohio Apr. 28, 2025) (same). But here, given Twiley's *pro se* status, and because Respondent preemptively addressed these two additional claims in the Return of Writ, the Undersigned will consider all three claims of ineffective assistance of counsel that Twiley presented to the state courts.

The Ohio Seventh District Court of Appeals addressed Twiley's ineffective assistance of trial counsel claims as follows:

{¶71} Appellant's third assignment of error states:

> THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

19

{¶72} In this assignment of error, appellant asserts his trial counsel was ineffective. First, he claims his counsel should have, and failed to, cross-examine Brittany's mother, Cheryl Reid. Next, he claims his counsel elicited a response from Brandy Ross, Brittany's sister, that he had threatened to kill Brittany. Finally, appellant asserts counsel should have objected to Dr. Barr's testimony regarding the autopsy and autopsy report because Dr. Barr was not the person who performed the autopsy or completed the report.

{¶73} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

{¶74} Appellant bears the burden of proof on the issue of counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

{¶75} First, appellant argues his counsel was ineffective for failing to cross-examine Reid. Reid was Brittany's mother. The jury listened to her testimony regarding the last time she saw her daughter and how her daughter's body was found. At the end of her testimony, defense counsel stated he had no questions for her and offered her his condolences for her loss. (Tr. 414.)

{¶76} The decision not to cross-examine Reid was likely a matter of trial strategy. Defense counsel may not have wanted to appear to badger the victim's mother after she just testified to her daughter's murder. He perhaps thought the better strategy was to simply offer his condolences. Defense counsel cross-examined the other witnesses, so the decision not to cross-examine Reid was likely a calculated strategical move. An appellate court will not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Rogers*, 7th Dist. Jefferson No. 14 JE 26, 2015-Ohio-2093, 34 N.E.3d 521, ¶ 24, citing *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985).

{¶77} Second, appellant argues his counsel was ineffective for eliciting a response from Brittany's sister that he had threatened to kill Brittany.

{¶78} During Ross's direct examination, she testified that appellant had told her that he wanted to kill Brittany. (Tr. 419). On cross-examination, defense counsel examined that issue further by inquiring of Ross whether she included that in her statement to police and why she did not tell her mother about this statement. (Tr.

20

428-429). Defense counsel's strategy was likely to control the damage from Ross's statement on direct examination. Again, we will not second-guess matters of trial strategy.

{¶79} Finally, appellant argues his counsel should have objected to Dr. Barr's testimony regarding the autopsy and autopsy report because Dr. Barr was not the person who performed the autopsy or completed the report.

{¶80} Dr. Barr testified that Allison Krywanczyk was a forensic pathology fellow with the Cuyahoga County medical Examiner's Officer the previous year and she had performed the autopsy on Brittany's body. (Tr. 665). At this point, the parties stipulated that Brittany's cause of death was a gunshot wound to the torso. (Tr. 665-666). Dr. Barr did not elaborate on Krywanczyk's autopsy report during direct examination. (State Ex. 18). On cross-examination, however, defense counsel spent a considerable time questing Dr. Barr regarding the contents of the report and Krywanczyk's findings. (Tr. 671-686).

{¶81} Once again, this was a matter of trial strategy. Defense counsel thoroughly cross-examined Dr. Barr regarding the autopsy report and various possibilities that could be gleaned from it. As was the case above, we will not second-guess matters of trial strategy.

{¶82} In sum, appellant has not demonstrated that his counsel's performance fell below an objective standard of reasonable representation.

{¶83} Accordingly, appellant's third assignment of error is without merit and is overruled.

*State v. Twiley*, 203 N.E.3d 843, 858–61 (Ohio App. 7th Dist. 2022).

When a claim has been adjudicated on the merits in state court, a federal habeas court may not grant relief unless the state court decisions were "contrary to" or "involved an unreasonable application" of "clearly established" Supreme Court decisions. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Because the state appellate court identified *Strickland v. Washington* as the "correct governing legal principle" from Supreme Court caselaw, the question is whether the state court "unreasonably" applied *Strickland* to Twiley's case. *See Hartman v. Yost*, 146 F.4th 463, 473–73 (6th Cir. 2025) (quoting *Williams*, 529 U.S. at 413).

The two-part test announced in *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate deficient legal performance and resulting prejudice. *Strickland*, 466 U.S. 668, 687 (1984). Establishing deficient performance by counsel "requires a showing 'that counsel's representation fell below an objective standard of reasonableness.'" *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688). To make such a showing, a petitioner "must overcome the 'strong [] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013) (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). In cases involving trial performance, like this one, a petitioner must also establish prejudice by showing that there is a reasonable probability that, but for his counsel's errors, the result of his trial would have been different. *Strickland*, 466 U.S. at 687. A reasonable probability is one sufficient to undermine confidence in the outcome of trial. *Id*. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The Court observed that while "'[s]urmounting *Strickland*'s high bar is never an easy task' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) and citing *Strickland*, 466 U.S. at 689). The standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state

22

court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.  That is, Twiley "must show that '*every* fairminded jurist would agree that *every* reasonable lawyer' would have pursued a different strategy." *Hartman v. Yost*, 146 F.4th 463, 474 (6th Cir. 2025) (quoting *Dunn v. Reeves*, 594 U.S. 731, 740 (2021) (emphasis in original).

Mindful of these admonitions, the Undersigned finds that the state appellate court properly analyzed Twiley's allegations of ineffective assistance of counsel and reasonably determined that Twiley could not satisfy *Strickland*'s deficiency prong with regard to his cross-examination claims. The cross-examination of witnesses falls within the arena of trial strategy that courts typically do not second guess. *Jackson v. Bradshaw*, 681 F.3d 753, 765 (6th Cir. 2012) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel.") (internal quotation marks and citation omitted).  "'The cross-examination of a witness is a delicate task; what works for one lawyer may not be successful for another.'" *Dickerson v. Johnson*, No. 3:14cv1717, 2021 WL 1165971, *2 (M.D. Tenn. Mar. 25, 2021) (quoting *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997)).  And "tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).

With respect to Cheryl Reid, the state appellate court determined that counsel's decision not to cross-examine a grieving mother likely was a strategic choice.  This was not an unreasonable conclusion because a more aggressive stance might have alienated the jury or provoked more sympathy for Reid.  And the fact that counsel thoroughly cross-examined other witnesses lends

support to the state appellate court's determination that counsel's decision to offer condolences was a strategic decision.

The state appellate court also reasonably determined that counsel's questioning of Brandy Ross, the victim's sister, was a matter of trial strategy and an apparent attempt to "control the damage" from Ross's direct examination. Ross testified on direct examination that Brittany and Twiley were in a relationship, that she observed them argue in the past, that she watched Twiley slash Brittany's tires two days before her body was found, that she feared for Brittany's safety, and that Twiley told her he wanted Brittany dead. (Doc. 8-2, at PAGEID # 703–08). On cross examination, counsel got Ross to admit that even though she heard Twiley say he wanted to kill Brittany, she did not call the police because "that's how he talks" and "that's just how he was coming across to everybody." (*Id*. at PAGEID # 715–17). And counsel attempted to establish that Twiley was the type of person who was all talk and no action. (*Id*. at PAGEID # 714–17). Notably, counsel referred back to this line of questioning during closing argument to reiterate that Twiley made a lot of threats and liked to engage in "street talk." (Doc. 8-4, at PAGEID # 1114–16).

Twiley takes issue with the fact that during cross, counsel elicited more damaging evidence. When counsel asked Ross if Twiley ever actually "beat anybody's ass" despite his frequent threats to do so, Ross stated that Twiley had a physical confrontation with her female friend named Rocky. (Doc. 8-2, at PAGEID # 717). The fact that Twiley had a physical confrontation with one of Ross's friends came out on direct, but during cross examination, Ross stated the friend was a female. Still, the fact that counsel may have asked one question too many does not mean counsel performed deficiently because "tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available."

*Guysinger v. Warden, Noble Corr. Inst.*, No. 2:19-cv-774, 2019 WL 6310060, at *9 (S.D. Ohio Nov. 25, 2019), *report and recommendation adopted*, 2020 WL 772332 (S.D. Ohio Feb. 18, 2020).

Finally, Twiley argues that counsel should have objected to the testimony of Dr. Todd Barr, an employee of the Cuyahoga County Medical Examiner's Office, because Barr did not perform the autopsy or prepare the autopsy report. Had counsel objected, Twiley argues, "Barr would have been precluded from testifying and the autopsy report could not and would not have been admitted into evidence. As a result, the cause of death, necessary to prove beyond a reasonable [doubt] in a criminal jury trial would not have been satisfied." (Doc. 15, at PAGEID # 1333). This argument plainly lacks merit. It is apparent from the state court record that counsel approached the testimony of Dr. Barr with a strategy in mind. As the state appellate court noted, the parties stipulated to Brittany's cause of death as a single gunshot wound to the torso. (*See also* Doc. 8-3, at PAGEID # 952). Counsel also did not object to the introduction of the autopsy report. (*Id*. at PAGEID # 975). This was not unreasonable, considering that Twiley's theory of the case was that he was not the person who murdered Brittany—not that Brittany was not murdered. Defense counsel used Dr. Barr's expertise in forensic pathology to explain concepts to the jury such as blood volume and blood loss, inability to predict timing of bruises, and the likely distance from Brittany to the gun when it was fired. (*Id*. at PAGEID # 956–73). Counsel also questioned Barr about evidence collection protocols and the collection of trace evidence. In this way, trial counsel used Dr. Barr as his own witness. All in all, defense counsel spent far more time questioning Dr. Barr than the prosecutor. (Direct and re-direct examination, *id*. at PAGEID # 951–55, 974–75; cross and re-cross, PAGEID # 955–973, 975–76).

The Undersigned also notes that a review of the record as a whole does not support Twiley's claims of ineffective assistance of counsel. Twiley privately hired Attorney Levine, an

attorney of his own choosing.  Attorney Levine filed several motions on Twiley's behalf, including a motion for competency and several motions in limine that he renewed throughout the course of the trial.  (*See, e.g.*, Doc. 8-2, at PAGEID # 699–700; Doc. 8-3, at PAGEID # 847–48).  The record shows that counsel spoke with or attempted to speak with nearly every witness before trial and reviewed all discovery with Twiley.  (*See, e.g.*, Doc. 8-1, at PAGEID # 408–10; Doc. 8-3, at PAGEID # 909).  Counsel worked diligently to minimize the evidence indicating that Twiley was violent or had threatened Brittany in the past.  Counsel also thoroughly cross-examined the forensics experts to highlight the lack of direct evidence in the form of fingerprints and DNA. (*See, e.g.*, Doc. 8-2, at PAGEID # 637–643; Doc. 8-3, at PAGEID # 920–27).  Even after the trial started, counsel worked to keep open a favorable plea offer that Twiley was on the fence about taking.  (*See*, *e.g.*, Doc. 8-1, at PAGEID # 489–500; Doc. 8-2, at PAGEID # 503–19, 529–30).

The state appellate court's determination that counsel did not perform deficiently is reasonable.  Because the state appellate court's rejection of Twiley's claims of ineffective assistance of trial counsel is neither contrary to nor an objectively unreasonable application of *Strickland* and its progeny, the Undersigned **RECOMMENDS** that Twiley's third ground for relief be **dismissed with prejudice**.

## V.     RECOMMENDED DISPOSITION

For the foregoing reasons, the Undersigned **RECOMMENDS** that this action be **DISMISSED with prejudice**.

**IT IS SO RECOMMENDED.**

Date: October 20, 2025                          s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE

## <u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo and operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.